Rebecca June BOATSMAN, Appellee,

v.

James Robert BOATSMAN, Appellant.

No. 57778.

Supreme Court of Oklahoma.

Oct. 16, 1984.

As Amended March 11, 1985.

Rehearing Denied March 11, 1985.

Shears & Shears, by Jack L. Shears, Ponca City, for appellee

Rice, West, Vaughn & Stafford, by Barry G. Stafford, Edmond, for appellant.

HODGES, Justice.

The parties were divorced January 31, 1978, when their son was four and one-half years old. In the decree of divorce, which was approved by both parties, custody of the child was placed with the mother. On May 27, 1981, the father filed his Motion to Modify Custody, alleging that there had been a substantial change in conditions that materially affected the mental, moral, temporal, and spiritual welfare of the child, which made it in the best interest of the child that custody be changed to the father. After hearing, the trial court denied the motion, and the father appealed.

I

The father first argued that the trial court abused its discretion in denying his motion because the evidence demonstrated that there had been a substantial change of condition and revealed material facts which were either unknown or undiscoverable with reasonable diligence at the time of the initial custody order.

While it is true that an initial order determining custody may be modified where that modification is justified by the disclosure of facts which were in existence at the time of the prior order, but unknown and undiscoverable by reasonable efforts, *Carpenter v. Carpenter*, 645 P.2d 476 (Okla. 1982), the newly disclosed "facts" in this case were not in existence at the time of the decree of divorce. Father's motion was based upon the mother's activities and lifestyle adopted subsequent to that decree, and his entitlement to relief must be judged by the application of the first test repeated in *Carpenter*, supra, that of change of conditions.

The trial court was properly guided by *Gibbons v. Gibbons*, 442 P.2d 482 (Okla. 1968), in determining that the father had not met his burden of the change of condition. In that case we required that the parent seeking a change of custody show:

"(a) that, since the making of the order sought to be modified, there has been a permanent, substantial and material change of conditions which directly affect the best interests of the minor child, and (b) that, as a result of such change in conditions, the minor child would be substantially better off, with respect to its temporal and its mental and moral welfare, if the requested change in custody be ordered."

The trial court determined that the father had not shown that the alleged "changed circumstances" were permanent, and that, therefore, *Gibbons*, supra, prevented a modification. Unless we determine that the trial court's decision is clearly against the weight of the evidence so as to constitute an abuse of discretion, it will not be disturbed. *Ness v. Ness*, 357 P.2d 973 (Okla. 1960).

The father contends that the evidence conclusively shows an adverse impact upon the child from the mother's alleged frequent moves, alleged alcohol abuse, alleged illicit sexual affairs, and generally unstable lifestyle. He contended that the trial court refused to modify based upon this evidence simply because the mother "promised" to do better.

The record does not support the father's attempts to paint with such a broad brush. The "frequent" moves were from Oklahoma City, where the mother was living at the time of the divorce, back to Blackwell, where her parents and other relatives live, from Blackwell to Stillwater, where the child's father lives, and back to Blackwell when anticipated financial improvement did not develop. The record supports the mother's contention that the moves were made for legitimate reasons. While they necessarily have some adverse impact on the child, they do not reveal some newly developed character defect in the mother which gives rise to a conclusion that these

moves will be recurring. At the time of the hearing, the mother had established a home for herself and the child in Blackwell. The child was involved in both sports and school activities with success.

The sole evidence of post-decree alcohol abuse by the mother was the father's testimony concerning her arrest and conviction upon a plea of guilty to public intoxication arising out of an incident occurring approximately a year and one-half prior to the hearing. The mother admitted that she pleaded guilty to such a charge, but denied that she was in fact intoxicated. She explained, without objection, that she was a passenger in a vehicle stopped by the police and impounded when the driver was alleged to be intoxicated. She contended that the police officer placed her in custody only after he discovered she had no identification with her, but conducted no test to determine her sobriety. The plea of guilty, and the payment of a $35.00 fine resulted, she says, from advice of an attorney friend that the cost of contesting the charge would be prohibitive compared with the fine.

While there is credible evidence that the mother's judgment with regard to alcohol use is not what it should be, there was also evidence that it has improved considerably from the time of the divorce. The father offered no evidence of the mother's present alcohol habits, although he testified as to abuse occurring before the divorce. If the mother's testimony is to be believed, and it is undisputed, there is adequate support for the trial court's conclusion that the husband had not demonstrated a change for the worse in the conditions affecting the child's welfare in this regard.

The father also presented evidence of the mother's having allowed a boyfriend to spend the night at her home in Stillwater on occasions when the child was present. The mother testified without contradiction that the child was always asleep when the boyfriend shared her bedroom, and that the boyfriend was always "on the couch" when the child got up in the morning after these stays. She testified that after the father had told the boy that the boyfriend was in fact sleeping with the mother, she indicated to her son that what had gone on was wrong. The trial court determined that the father had not shown that the conduct was "permanent", and we cannot conclude that such a finding is against the clear weight of the evidence.

While the trial court expressed reservations about the actions taken by the mother, and her ability to "live up" to the standards which she had adopted which led him to believe that the "changes" the father described were not permanent, its conclusion that the father had failed to show a permanent, substantial, and material change of conditions which affected the welfare of the child was supported by more than just the mother's promise to "be good." We cannot say that its discretion was abused.

## II

The father also contended that the trial court erred in applying the "change of circumstances" test established in *Gibbons*, supra, rather than determining the best interest of the child as if there had been no prior custody order. The father says the *Gibbons* Test was abandoned by this Court in *Wells v. Wells*, 648 P.2d 1223 (Okla. 1982). *Wells* did not mark a departure by the Court from that line of precedent, of which *Gibbons* is a part, which required that modification of custody orders be supported by proof of change of circumstances leading to the conclusion that the best interest of the child would be served by changing custody. Rather than repudiating *Gibbons*, the majority in *Wells* cited it as authority for imposing the burden of proof on the moving party. *Wells'* reference to a "best interest" test reflects only that ultimately all child custody matters must be determined on the best interest of the child. The Court determined only that the father had established a prima facie case under the *Gibbons'* test, and required the mother to come forward with some evidence in response.

In this case, the trial court heard all the evidence both parties presented, concluded the father had not demonstrated sufficient grounds for modification, and denied the motion. In contrast with the present case, the mother in *Wells* expressed her intention to continue her living arrangement, and there was no question but that the "change of circumstances" was "permanent", at least according to the father's evidence. Our decision in *Wells*, supra, does not dictate reversal in this case.

The father suggests that the "change of circumstances" test is not applicable because custody of the child was not "actually litigated" in the initial divorce proceedings. To be accurate, under this reasoning none of the provisions of the divorce decree were "actually litigated," for the father signed a waiver.

The "change of circumstances" requirement is an attempt to accord some degree of finality to factual and legal determinations made in divorce and custody matters, which if absent would lead to constant relitigation of matters already determined. Its application is akin to res judicata. A consent judgment is entitled res judicata treatment and precludes relitigation of the same claim. *Miller v. Miller*, 664 P.2d 1032 (Okla. 1983). The father has offered no authority for the proposition that it should not be applied in this context.

In determining custody, the trial court is required to determine where the best interests of the child lies at the time of the initial decree. We see no reason to introduce further uncertainty into custody litigation by allowing the parties to reopen those determinations based upon their contention that that issue had not been "actually litigated." The ability to modify the decree upon a showing of "change of circumstances" offers adequate opportunity for the parties and the court to protect the interests of the child while giving some finality to litigation that would be destructively never-ending otherwise.

The trial court decision is not against the clear weight of the evidence, and we find no abuse of discretion. Its judgment is accordingly affirmed.

CERTIORARI GRANTED. OPINION OF COURT OF APPEALS VACATED. JUDGMENT OF TRIAL COURT AFFIRMED.

LAVENDER, DOOLIN, HARGRAVE, WILSON and KAUGER, JJ., concur.

BARNES, C.J. and SIMMS, V.C.J., concur in result.

OPALA, J., dissents.